Bradford SORENSON and Gail Sorenson,
Plaintiffs-Appellants,

v.

George RAYMOND, Defendant-Appellee.

No. 74–2624.

United States Court of Appeals,
Fifth Circuit.

June 1, 1976.

<hr />

David A. Demers, St. Petersburg, Fla., for plaintiffs-appellants.

Albert B. Lewis, St. Petersburg, Fla., for defendant-appellee.

Before WISDOM, COLEMAN and GEE, Circuit Judges.

GEE, Circuit Judge:

The major question in this case is whether an out-of-court admission that conduct was motivated by racial prejudice may be explained away in court—like other such liability-creating declarations [1]—or whether it is final and fatal. We hold that it may be explained.

---

1. *Brown & Root, Inc. v. American Home Assurance Co.,* 353 F.2d 113, 116 (5th Cir. 1965), *cert. denied,* 384 U.S. 943, 86 S.Ct. 1465, 16 L.Ed.2d 541 (1966); *see* Note, 39 Texas L.Rev. 516 (1961).

Appellants are a white couple who seek compensatory and punitive damages under 42 U.S.C. § 1982 (1970),[2] plus attorneys' fees and costs. The defendant is their former landlord, who allegedly evicted them because they entertained two black guests. They appeal a judgment entered on special jury verdicts finding that race was not a significant factor in their landlord's decision to evict them and that they suffered no damages from the eviction.

In detail, appellants complain that the trial court should have (1) granted them a partial summary judgment on the liability issue under collateral estoppel principles because appellee's acts had already been found discriminatory in a prior proceeding; (2) granted them a directed verdict on the liability issue, as well as compensatory and punitive damages, costs, and attorneys' fees; (3) granted them a new trial because the verdict is contrary to the greater weight of the evidence; (4) granted them a new trial because of prejudicial comments by appellee's counsel about possible drug use by appellants; and (5) prohibited appellee from using his peremptory challenges to exclude blacks from the jury. Finding no error in the jury verdict or the court's rulings, we affirm.

One day during the tenth month of appellants Brad and Gail Sorenson's year lease, landlord Raymond, after appellants had said they would not be home,[3] entered their apartment to find appellants and four other persons, including two black girls[4] and a prior tenant whom Raymond disliked. Inviting Brad Sorenson downstairs, Raymond announced that appellants must vacate their apartment, responding "Yes," when Sorenson inquired whether the presence of two black girls had caused Raymond's decision. Raymond later testified that his true motive was fury at discovering the presence of an objectionable former tenant and a large number of people preparing for a party. Additionally, he chronicled the frequent complaints by other tenants about loud music, late parties, strewn trash, and other irritating practices by appellants, and he related his concern for the physical condition of his apartment. He insisted that he had responded affirmatively to Sorenson's inquiry about the two black girls in an impassioned effort to anger Sorenson, having no later opportunity to give his real reasons for the eviction.[5]

## I. COLLATERAL ESTOPPEL.

In a prior case the government obtained a preliminary injunction prohibiting appellee from discriminating racially in the operation of his apartment building after finding that he had declared he was evicting appellants because they had black guests.[6] The parties later stipulated that the hearing for the preliminary injunction should be treated as a trial on the merits and that the court enter a permanent injunction to replace the preliminary injunction. Appellant insists that the prior finding of racial discrimination collaterally estops appellee from contesting that issue here. But a finding against a defendant at a preliminary injunction hearing cannot estop him from contesting the same issue in

2. They do not appeal the lower court's dismissal, based on the statute of limitations, of their companion claim under 42 U.S.C. § 3604 (1970).

3. Raymond had called to ask about a briefcase he had forgotten earlier, which the Sorensons left at a neighbor's apartment because of their intention to leave for the evening.

4. Whom he had seen earlier. In response to an anxious neighboring tenant's inquiry, he had stated that he did not intend to rent an apartment to the two girls, although he insists he meant only that they had never inquired about renting.

5. Although Raymond admitted to federal investigators several days after the incident that he would prefer not to rent to blacks for fear that having black *tenants* would lower the value of his property, no black had ever applied, and he did not complain about fearing the effect of black *visitors* on his investment. Raymond countered any suggestion of actual racial animus by pointing to his participation in several civic projects designed to improve race relations.

6. Although whether the judge went beyond appellee's statement to a finding on motive is unclear.

another suit, because the judge in a preliminary injunction hearing seeks only to preserve the status quo by determining whether plaintiffs have "a substantial likelihood" of succeeding on the merits.[7] Nor does the consent decree change the result. While this circuit no longer adheres strictly to the traditional mutuality requirement,[8] to foster consent agreements we have held that in general a consent decree is not binding on parties not in privity with the parties to the decree. *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40, 65 (5th Cir. 1974), *petition for cert. filed,* 44 U.S.L.W. 3350 (U.S., Dec. 9, 1975). This is an appropriate case in which to apply our rule, since appellee did not have the same incentive to litigate fully the discriminatory-motive issue that he would have if he had known that an adverse ruling on that issue might later subject him to liability for money damages.[9]

## II. DIRECTED VERDICT AND NEW TRIAL.

To find a violation of section 1982's prohibition of racial discrimination in the sale or rental of property, this court in *United States v. Pelzer Realty Co.,* 484 F.2d 438, 443 (5th Cir. 1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974), declared that the finder of fact must rule that race is at least "one significant factor" in the apartment rental decision. Appellants claim that they deserved a directed verdict on the ground that the use of discriminatory language coupled with the loss of rights makes motive or intent irrelevant, and for support they rely primarily on language in *Pelzer* that

it is not necessary to show that [defendant] intended to deprive [the victims] of rights granted by the [Fair Housing] Act. A violation occurred because his words had that effect.

*Id.* at 443 (omitting cases). But the *Pelzer* court, faced with an alleged violation of a statute[10] that prohibits discrimination in the terms of sale or rental of a dwelling, found that a verbal demand made of these blacks that would not have been made of whites[11] was discriminatory treatment, regardless of motivation, because the unretracted words themselves imposed on blacks a condition which was not imposed on similarly-situated whites.

■ In support of its ruling, the *Pelzer* court cited *United States v. Mintzes,* 304 F.Supp. 1305 (D.Md.1969), which found illegal attempts by whites to induce homeowners to sell their dwellings by representations regarding the prospective entry of blacks into the neighborhood. The representations were *themselves* actions which violated the "anti-blockbusting" statute, 42 U.S.C. § 3604(e) (1970), which prohibits attempted inducements to sell using such racially oriented representations, regardless of racial motivation. As to them, there was no question of motive, for they were actionable regardless of the intent with which they were uttered and were specifically made so by statute. Here, however, the questioned conduct challenged as violative of § 1982's prohibition of discrimination in the sale or rental of property, is only evidence of the violation—a racially-discriminatory motive—not the violation itself. It may be that there are circumstances where

7. *See e. g., Morgan v. Fletcher,* 518 F.2d 236, 239 (5th Cir. 1975).

8. For example, a plaintiff who lost a summary judgment on the same issue in a prior proceeding is collaterally estopped from relitigating that issue in a later suit against a different defendant if he had "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." *Poster Exch., Inc. v. National Screen Serv. Corp.,* 517 F.2d 117, 123 (5th Cir. 1975), *quoting Blonder-Tongue Labs., Inc. v. University of Ill. Fdn.,* 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788, 802 (1971).

9. Furthermore, he lost little or nothing by agreeing not to break the law in the future.

10. 42 U.S.C. § 3604(b) (1970).

11. A real estate agent, concerned about having difficulty selling the remaining vacant lots in a subdivision if he sold two to blacks, offered to waive closing costs, a discount given all white purchasers, only if the black found buyers for the other lots.

the evidence of racial motivation can be so conclusively inferred from a defendant's words that a court might direct a verdict based on words alone. But where, as here, the only objectionable word uttered was an inculpatory "Yes," it would be unjust to deny a defendant the opportunity to explain in his defense that he did not intend to speak the words or that his words, provoked by a leading question, were intended only to enrage, not to convey truthful information.

■ Appellants argue in the alternative that the evidence so strongly supports a finding that race was a dominant factor in the eviction decision that they were entitled to either a directed verdict or a new trial. But after examining the record, we cannot say that the evidence, considered in the light most favorable to appellee, so strongly supports appellants that they deserved a directed verdict.[12] Nor can we say that the verdict was so contrary to the greater weight of the evidence that we should find that the trial judge abused his discretion in refusing to grant a new trial.[13] Refusing to overturn the jury verdict, we intimate no view on appellants' claim for compensatory and punitive damages. And, of course, since we affirm the judgment for appellee, appellants cannot recover costs or attorneys' fees. *Sapp v. Renfroe,* 511 F.2d 172, 178 (5th Cir. 1975); *Sierra Club v. Lynn,* 502 F.2d 43, 64–66 (5th Cir. 1974), *cert. denied,* 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484 (1975).

### III. PREJUDICIAL COMMENTS.

■ After a ruling that appellee could not introduce testimony that a tenant suspected appellants of using marijuana, appellee called Brad Sorenson as an adverse witness, inquired whether he had ever used his apartment for unlawful purposes, and when Sorenson said no, asked whether he had ever used marijuana. This conduct by appellee's counsel borders on intentional misconduct in disregarding the judge's prior ruling and admonition against introducing any evidence of possible drug usage by appellants.[14] But the trial judge immediately instructed the jury to disregard the question, making no further explanation to the jury only because appellants' counsel asked him not to. In these circumstances, since the question elicited no damaging information, we cannot say that the prejudicial question made the proceeding so manifestly unfair that the trial judge abused his discretion in refusing to grant a new trial.

### IV. PEREMPTORY CHALLENGES.

■ Appellants argue that appellee denied them a fair trial with a representative jury by using his peremptory challenges to eliminate all blacks from the jury. But the Supreme Court has recognized that the peremptory challenge cannot be subject to judicial review even when exercised by the prosecution along racial lines, because the fairness of trial by an impartial jury requires no less. *Swain v. State of Alabama,* 380 U.S. 202, 220–22, 85 S.Ct. 824, 835–36, 13 L.Ed.2d 759, 772–73 (1965). If discriminatory use of peremptory challenges by a government official cannot be challenged, then *a fortiori,* such practices by a private party are beyond this court's power to review.

### CONCLUSION

Neither we nor our district courts sit to pass upon the taste of litigants or the attractiveness of their positions. Our commitment is to truth and process, with emphasis on the former below and the latter here. A careful inquiry into the process observed in the district court has not convinced us that the truth was not served.

AFFIRMED.

12. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc.)

13. *See National Car Rental Sys., Inc. v. Better Monkey Grip Co.,* 511 F.2d 724, 730–31 (5th Cir. 1975).

14. Despite lame explanations by counsel for appellee that he intended only to impeach the witness.