**H. K. PORTER COMPANY, INC., a Delaware Corporation, Plaintiff-Appellant,**

v.

**METROPOLITAN DADE COUNTY, a Florida Municipal Corporation, Defendant-Appellee.**

No. 80–5001.

United States Court of Appeals, Fifth Circuit. Unit B

July 17, 1981.

---

1. Quoting from *Marker v. Finch*, 322 F.Supp. 905, 909, 910 (D.Del.1971).

Mershon, Sawyer, Johnston, Dunwody & Cole, Michael C. Cesarano, Robert T. Wright, Jr., Charles C. Kline, Miami, Fla., Collier, Shannon, Rill, Edwards & Scott, Richard E. Schwartz, Washington, D. C., for plaintiff-appellant.

Robert A. Cuevas, Jr., Asst. County Atty., Miami, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, FRANK M. JOHNSON, Jr. and ANDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

H. K. Porter Company [Porter Co.] appeals from the district court's order dissolving a Temporary Restraining Order [TRO], denying its motion for an order to show cause and denying its motion for leave to file a supplemental complaint in this diversity action involving the award of a government contract. Because the contract has been awarded to another party during the pendency of Porter Co.'s appeal, the subject matter of this appeal is now moot and we will not reach the merits of Porter Co.'s appeal.

I

On June 10, 1979, appellee Metropolitan Dade County [MDC] advertised for bids on an electrified third rail of a proposed rapid transit system for the Miami metropolitan area scheduled for completion in 1984. The construction costs for the electrified rail

entitled Contract Y–621 were estimated at $9.2 million; the Urban Mass Transit Administration [UMTA] of the Department of Transportation [DOT] was to finance 80% of these costs through a federal grant and MDC would contribute 20% of the costs. On August 8, 1979, three bids on Contract Y–621 were received and Porter Co.'s $8,076,506.30 bid was the lowest; Transit Products, Inc. [Transit], which is not a party to this action, made the second lowest bid at $8,373,502.00.

MDC's bid invitation included a Minority Contractor Participation provision [Addendum 3] which required each bidder to either (a) involve minority business enterprises [MBE's] at 5% of the contract work or (b) demonstrate that it has made every reasonable effort to contact and negotiate with minority business enterprises in an attempt to subcontract work to achieve the 5% goal.[1] Porter Co.'s bid included the Addendum 3 forms but the forms were blank; Transit's bid included two minority contractors (businesses owned or controlled by women) for $580,000 of the contract work. Transit protested Porter's bid for failing to comply with Addendum 3. MDC decided to reject all of the bids on Contract Y–621 but it failed to follow its own procedures in doing so.

1. Addendum 3 provides in pertinent part that a bidder was required to *either*:
   (a) involve minority business enterprises (MBE's) in five percent of the contract work; or
   (b) demonstrate that:
   \* \* \* \* \* \*
   "1. it has made every reasonable effort to contact and negotiate with Minority Contractors in an attempt to subcontract work, including every reasonable effort to select the portions of the work proposed to be subcontracted, in order to achieve the stated goal;
   2. it was unable, notwithstanding such efforts, to achieve the stated goal because Minority Contractors were not Qualified or were Unavailable; and . . .". (Section IIIC of Appendix B p. 4, Plaintiff's Exhibit 1F, admitted in evidence October 19, 1979).
   MDC had promulgated this provision in response to DOT's Secretary Order 4000.7A and UMTA's Circular 1165.1 which sought to clarify DOT's MBE's policy and requirements for

On October 17, 1979, Porter Co. filed this diversity action against MDC alleging its failure to offer Porter Co. the requisite administrative review to determine whether Porter Co.'s bid was in compliance with the MBE provision. The district court (Judge King) granted Porter Co. an *ex parte* TRO on October 18, 1979, to maintain the status quo until the court could entertain Porter Co.'s preliminary injunction motion.[2] The TRO was extended twice and was to expire on November 3, 1979; on November 2, 1979, the district court granted Porter Co.'s summary judgment motion and ordered MDC to reinstate all of the bids and to hold a hearing before a Contracting Officer as required by MDC's regulations in order to evaluate the responsiveness of Porter Co.'s bid. During the interim, Porter Co. had amended its complaint to allege that MDC's rejection of all the bids was arbitrary and capricious and to request a mandatory injunction requiring MDC to award the contract to Porter Co.

The compliance hearing was held on November 28, 1979, before Contracting Officer John Dyer; after hearing Porter Co.'s evidence, Dyer determined that Porter Co. had not complied with the MBE's provision and indicated that he would recommend that Transit be awarded the contract.[3] UMTA

UMTA grant recipients. An MBE was defined as:
> a business enterprise that is owned and controlled by one or more socially or economically disadvantaged persons. Such disadvantage may arise from cultural, racial, chronic economic circumstances or background, or other similar cause. Such persons would include, but not be limited to, Blacks (not of Hispanic origin); Hispanics; Asians or Pacific-Islanders; American Indians or Alaskan Natives; and women, regardless of race or ethnicity.

2. Porter Co.'s preliminary injunction motion was not ruled on by Judge King; however, Porter Co. was granted a summary judgment which provided essentially the same relief sought by the injunction.

3. He specifically found (1) Porter Co. failed to make every reasonable effort to contact and negotiate with MBE's other than by telephoning and corresponding with its already existing suppliers, (2) Porter Co.'s argument that no

concurred with Dyer's decision which assured the 80% federal participation. After learning that Dyer planned to make his recommendation to MDC on December 18, 1979, Porter Co. sought and received on December 18 an emergency *ex parte* TRO which enjoined MDC from awarding the contract to another bidder for ten days. Porter Co. also moved for an order to show cause why MDC should not be held in contempt of the district court's summary judgment order. MDC responded by moving for an emergency hearing to dissolve the TRO because the delay in awarding Contract Y–621 was causing a significant increase in the contract's overall price.

The district court (Judge Kehoe)[4] held hearings on these motions on December 18 and 19 at which both parties were able to argue and present evidence. Porter Co. amended its show cause motion on December 20, 1979, to allege for the first time that the MBE requirements exceeded the government's statutory authority and violated the equal protection clause of the Constitution and Title VI of the Civil Rights Act of 1964. Additionally, Porter Co. moved on December 21 for leave to file a supplemental complaint which sought to join the United States Secretary of Transportation as a party and included the allegations of the unconstitutionality of MDC's actions. On December 27, 1979, Porter Co. filed a second preliminary injunction motion to preserve the status quo once the TRO expired on December 28; alternatively, Porter Co. moved to extend the TRO to prevent MDC from awarding the contract to Transit.

On December 28, 1979, the district court granted MDC's motion to dissolve the TRO and denied Porter Co.'s show cause motion and motion for leave to file a supplemental complaint. In its memorandum opinion, the district court (Judge Kehoe) indicated that it was determining the merits of the pending motions of both parties. Consequently, the district court reached the merits of Porter Co.'s allegations that the MBE goal was unconstitutional; the court found that the 5% goal was constitutional and that the goal as applied to Porter Co. did not exceed the bounds of fundamental fairness. Moreover, in denying Porter Co.'s motion to show cause why MDC was not in contempt, the district court reviewed the hearing held before Contracting Officer Dyer and found that the hearing complied with Judge King's order granting summary judgment for Porter Co. The district court denied Porter Co.'s motion to add the Secretary of Transportation as a party defendant without discussion. Porter Co.'s second preliminary injunction motion was not mentioned in the December 28, 1979 order but Porter Co. has not alleged any error with respect to the district court's treatment of that motion.

Porter Co. filed a notice of appeal from the district court's final judgment and memorandum order on December 28, 1979. The district court had indicated during the hearing held on December 28 that it would stay its order for ten days to allow Porter Co. to apply to this Court for an injunction pending appeal. On January 4, 1980, the Fifth Circuit granted Porter Co. an additional five-day stay of the district court's order to allow consideration of Porter Co.'s Emergency Motion for Injunction Pending Appeal; however, the five-day stay was subsequently vacated on January 9, 1980, when this Court denied Porter Co.'s emergency motion. Shortly thereafter MDC awarded Contract Y–621 to Transit.

## II

While a district court's order dissolving a TRO is generally not appealable, this Court will look beyond the terminology used by the parties or the district court to examine "the substance of the proceeding

---

capable MBE's existed was refuted by Transit's bid submission and (3) Porter Co. failed to identify MBE's it intended to utilize prior to submission of its bid as required.

4. Because Judge King was unavailable to hear Porter Co.'s second motion for an emergency TRO, the case was reassigned to Judge Kehoe who made the order that is the subject of this appeal.

below." *See Dilworth v. Riner,* 343 F.2d 226, 229 (5th Cir. 1965); *Adams v. Vance,* 570 F.2d 950, 953 (D.C.Cir.1977). When the district court's refusal to grant or extend a TRO effectively terminates an action for injunctive relief, the Court's order of refusal is appealable as a final order under 28 U.S.C.A. § 1291. *See Woods v. Wright,* 334 F.2d 369, 374 (5th Cir. 1964); *F. T. C. v. Food Town Stores, Inc.,* 539 F.2d 1339, 1342 (4th Cir. 1976). As MDC conceded at oral argument, the district court's order dissolving the TRO was final for the purposes of this appeal since without the TRO, MDC was free to award Contract Y–621, the subject matter of the litigation, to Transit. Since Porter Co. was unsuccessful in obtaining a stay of the district court's order, MDC was entitled to treat the order as final and award the contract to Transit. Consequently, we are unable to award the relief requested by Porter Co.[5] and must dismiss this appeal as moot.[6] *See American Grain Ass'n v. Lee-Vac, LTD,* 630 F.2d 245, 247 (5th Cir. 1980).

It is clear that Porter Co. did not allege damages in its original, amended or proposed supplemental complaints. In fact, Porter Co. was aware of the need to allege damages, for its show cause motion dated December 18, 1979, states that without the TRO, MDC would be able to award the contract; thus Porter Co. argued that, if. the district court found that it was not entitled to injunctive relief, Porter Co. would have to rely on its remedy at law for damages. Moreover, Porter Co. acknowledged during the December 28, 1979, hearing before the district court that the supplemental complaint prayed only for injunctive relief and orally moved to amend that complaint to assert a prayer for damages. The district court refused to consider the oral motion but stated "[i]f you have a motion, file the motion." Porter Co. has made no formal attempt to allege damages or any other form of relief that would maintain the controversy. A damage claim, or the existence of any other viable issues in dispute,[7] could have saved this action from mootness. *See, e. g., Socialist Workers Party v. Hill,* 483 F.2d 554, 556 (5th Cir. 1973); *Lister v. Lucey,* 575 F.2d 1325, 1336 (7th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978).

Although this appeal alleges other issues, our review is generally confined to the injunctive aspects of the district court's order and we will not use our discretionary power to examine the noninjunctive aspects of this appeal such as the constitutional issues raised by Porter Co.'s other motions. *See, e. g., Western Electric v. Milgo,* 568 F.2d 1203, 1208 (5th Cir.), *cert. denied,* 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978); *Brown v. New Orleans Clerks & Checkers U., etc., v. Newman,* 590 F.2d 161, 165 (5th Cir. 1979); *Myers v. Gilman,* 544 F.2d 837 (5th Cir.), *cert. dismissed sub nom. International Brotherhood of Electrical Workers Local 741 v. Myers,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). Generally, once we conclude that the subject of the appeal has become moot, we are precluded from reaching the merits of the controversy. *See Socialist Labor Party v. Gilligan, Gov. of Ohio,* 406 U.S. 583, 589, 92 S.Ct.

---

5. Porter Co. seeks a reversal of the district court's denial of its motions for an order to show cause and for leave to file a supplemental complaint. Porter Co. also seeks a ruling from this Court that MDC violated Porter Co.'s constitutional rights by applying its MBE provisions to Porter and that MDC's actions were arbitrary and capricious. Finally, Porter Co. desires a remand to the district court on the issue of damages. For the reasons discussed *infra* we are unable to grant Porter Co. the relief it seeks.

6. Neither of the parties raised the mootness issue, but mootness arguments that concern the subject matter jurisdiction of this Court may be raised at any time. *See Carr v. Saucier,* 582 F.2d 14, 16 (5th Cir. 1978).

7. As we noted above, Porter Co. did not allege that the district court erred by not specifically addressing its second preliminary injunction motion. Moreover, Porter Co. moved for a preliminary injunction *or in the alternative* an extension of the TRO: the district court's ruling on the TRO effectively foreclosed the relief requested in the preliminary injunction and was effectively a denial of the preliminary injunction. *See Levesque v. State of Maine,* 587 F.2d 78, 80 (1st Cir. 1978). .

1716, 1720, 32 L.Ed.2d 317 (1971); *Bowers v. U. S. Board of Parole*, 544 F.2d 898, 899 (5th Cir. 1977). Furthermore, because the hearings on MDC's motion to dissolve the TRO did not constitute a full trial on the merits, we conclude that the district court erred in reaching the merits of the constitutional issue raised by Porter Co.[8] Since we VACATE the district court's order and REMAND with instructions to dismiss the complaint, the district court's order will be without precedential effect and any error made by the district court is rendered harmless.[9] *See Bowers v. U. S. Board of Parole, supra,* 544 F.2d at 900.

VACATED and REMANDED.

**8.** It is clear that the general rule is to the effect that when the parties do not submit their case to the trial court on its merits, the trial court's decision granting or denying a temporary injunction does not constitute the law of the case since the court's function is essentially to maintain the status quo until the merits can be fully addressed; thus the parties are not estopped as to the merits. *See, e. g., Sorenson v. Raymond,* 532 F.2d 496, 498–9 (5th Cir. 1976); 7 Moore's Federal Practice ¶ 65.21 (2d ed. 1979).

**9.** Once we have determined that no viable issues remain in dispute and that the appeal must be dismissed for mootness, it is our duty to vacate the decree and remand with directions to dismiss the complaint following *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936). *See Great Western Sugar Co. v. Nelson,* 442 U.S. 92, 93, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1978) (per curiam); *see also Carr v. Saucier, supra,* 582 F.2d at 16. Even if we agreed with the district court's treatment of the merits of Porter Co.'s constitutional claims, we would not be able to allow its judgment to stand. *Great Western Sugar Co. v. Nelson, supra,* 442 U.S. at 94, 99 S.Ct. at 2150.