### INDEPENDENT BANKERS ASSOCIATION OF AMERICA, Plaintiff,

v.

### C. Todd CONOVER, Comptroller of the Currency of the United States of America and Dimension Financial Corporation, Defendants.

### Civ. A. No. 84–3201.

United States District Court,
District of Columbia.

Feb. 27, 1985.

---

Leonard J. Rubin, Lucas, O'Brien & Raiser, Washington, D.C., H. Boone Porter, III,

Brown, Koralchik & Fingersh, Overland Park, Kan., for plaintiff.

Richard K. Willard, Acting Atty. Gen., Joseph E. diGenova, U.S. Atty., Sandra M. Schraibman, Shalom Brilliant, Dept. of Justice, Civ. Div., Washington, D.C., for defendant C. Todd Conover.

Jeffrey S. Davidson, Kirkland & Ellis, Washington, D.C., for defendant Dimension Financial Corp.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The controversy before the Court involves the legal authority of the Comptroller of the Currency ("the Comptroller") to issue final charters to the Dimension Financial Corporation to operate thirty-one proposed national banks. The plaintiff, Independent Bankers Association of America ("I.B.A.A.") has challenged the Comptroller's issuance of preliminary approval to four of the proposed banks on the grounds that "the [Comptroller's decision] purporting to determine the merits of certain controversies arising under the Bank Holding Company Act (12 U.S.C. § 1841, *et seq.*) is unlawful" and beyond the authority of the Comptroller.

This controversy over the jurisdiction of the Comptroller arises out of division of federal regulation of the banking industry among several federal agencies. The defendant in this case, the Office of the Comptroller, was established to oversee the regulation of national banks chartered under the National Bank Act. 12 U.S.C. § 1, *et seq.* Another independent agency, the Federal Reserve Board, has jurisdiction to administer and enforce the Bank Holding Company Act, 12 U.S.C. § 1841, *et seq.* Although the laws they administer are distinct, these and other federal and state regulators often have overlapping interests and authority.

The ultimate issue in this case is the applicability of the Bank Holding Company Act ("B.H.C.A.") to the proposed Dimension banks. If the B.H.C.A. is indeed applicable, jurisdiction to determine the legality of the proposed banks under the B.H.C.A. would be exclusively vested with the Federal Reserve Board. *Whitney National Bank v. Bank of New Orleans*, 379 U.S. 411, 419–20, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965). More important from a practical standpoint, application of the B.H.C.A. might result in preventing Dimension's operation of the proposed banks because section 3(d) of the B.H.C.A. generally prohibits a bank holding company from holding banks in more than one state.[1] 12 U.S.C. § 1842(d).

For purposes of the B.H.C.A., the term "bank" is defined as an institution which both "(1) accepts demand deposits that the depositor has a legal right to withdraw on demand, and (2) engages in the business of making commercial loans." 12 U.S.C. § 1841(c). The I.B.A.A. claims that there is a substantial question whether the Dimension banks are indeed "banks" under this definition, subject to the B.H.C.A.[2] The I.B.A.A. further argues that the authority to decide these questions under the B.H.C.A. is within the exclusive jurisdiction of the Federal Reserve Board and that the Comptroller cannot, as a matter of law, issue final charters to the Dimension banks until the Federal Reserve Board determines the legality of the transaction under the B.H.C.A.

### Background

The facts are undisputed. Dimension Financial Corporation ("Dimension"), a Delaware corporation with its principal place of business in Denver, Colorado, is a subsidi-

---

**1.** The proposed Dimension banks would be established in 25 states.

**2.** Defendants concede that Dimension banks will accept demand deposits; the controversy turns on whether the banks will engage in the making of commercial loans. Dozens of "non-

bank banks" or limited-service banks have been approved in recent months on the grounds that one of the two elements of the "bank" definition will be avoided. *See* Wall Street Journal, Nov. 2, 1984 at 2, col. 3; Washington Post, Nov. 2, 1984 at E1, col. 5.

ary of Financial Investments, Inc. ("FII"), which in turn is a subsidiary of Valley Federal Savings & Loan Association of Hutchinson, Kansas, a federally chartered savings and loan association. In March, 1983, Dimension filed with the Comptroller 31 applications to charter 31 separate wholly-owned national bank subsidiaries.[3]

A short time later, Deerbrook State Bank, a member of plaintiff I.B.A.A., filed a petition with the Board of Governors of the Federal Reserve System, requesting that the Board commence hearings under the B.H.C.A. to examine the legality of the proposed Dimension banks.[4] In June, 1983, the I.B.A.A., on behalf of its members, filed a letter with the Federal Reserve Board concurring with and joining in the petition of Deerbrook State Bank.

At the time, the I.B.A.A.'s argument that the proposed Dimension banks would constitute "banks" under the B.H.C.A. was based largely on an expanded definition of the term "commercial loans" as used in 12 U.S.C. 1841(c). In May, 1983, the Board had put out for notice and comment a proposed revision to Regulation Y ("Reg. Y"), which implements the B.H.C.A. The revisions included this expanded definition of "commercial loan" as including the sale or trading of commercial paper, certificates of deposit, bankers' acceptances, broker call loans, and federal funds.[5] 48 Fed.Reg. 23520, 23521 (May 25, 1983). Aside from the I.B.A.A., the proposed amendments were not well received. Both the F.D.I.C. and the Comptroller of the Currency expressed their disagreement with the Board's position; virtually all of the comments received on the proposed redefinition were negative. Nevertheless, on December 29, 1983, the Board incorporated its expanded definition in a final rule amending Regulation Y ("Reg. Y"), 12 C.F.R. Part 225 (1983), 49 Fed.Reg. 794 (January 5, 1984).

Of course, the action of the Board did not go unnoticed by Dimension. By letter of August 26, 1983 to the Comptroller, Dimension made a commitment to avoid engaging in the activities defined as "commercial lending" by Reg. Y as long as that definition was in effect.[6]

Meanwhile, proceedings on the Dimension petition continued before the Office of the Comptroller. On April 28, 1983 the Office published notice of its decision to hold public hearings on the applications. 48 Fed.Reg. 19265. The hearings were held on August 8–12, 1983 and the comment period remained open through September 16. Over 90 parties participated and they were generally opposed to the Dimension proposal for a variety of reasons, including the legal issue of Dimension's status under the B.H.C.A.

On November 15, 1983, the Board, through its general counsel, made its first official comment to the Comptroller on the then-pending Dimension proposal. In a letter to the Chief Counsel to the Office of the Comptroller of the Currency, the general counsel to the Board noted that while it did "not appear appropriate for the Board at this time to take any action on the Deerbrook Bank's petition," the purpose of the correspondence was to "inform you that . . . there is a substantial question whether

---

**3.** The Comptroller examines the applications of all national bank applicants "to determine whether the association is lawfully entitled to commence the business of banking." 12 U.S.C. § 26.

**4.** This petition, supplemented in June, 1983, suggested that the Dimension Banks would in fact engage in "commercial lending" and further stated that "the relationships between Dimension, FII and Valley are part of a scheme to avoid various provisions of federal and state law, including, but not limited to, restrictions against interstate banking set forth in § 3(d) of the [Bank Holding Company] Act."

**5.** This notice was not the first inkling of the Board's new position on the scope of the "commercial loans" definition. The amendments to Reg. Y merely codified the Federal Reserve Board's earlier position in a case involving the Dreyfus Corporation's plans to acquire the Lincoln State Bank. Letter to William M. Isaac, Chairman, FDIC, from William W. Wiles, Secretary, Board of Governors (December 10, 1982) ("Dreyfus Letter").

**6.** Dimension made the same representation in a letter to the Board dated January 6, 1984.

the Dimension banks would be 'banks' for the purpose of the BHC Act." The letter went on to state that "neither the Board nor the staff has made any final determination on the status of the Dimension banks under the BHC Act. I expect that any Board action on this issue would take place promptly after the granting of any preliminary charters.... [I]n fact, applicable case law requires that any final charter approval of any Dimension banks be conditioned either on Dimension's obtaining prior approval under the BHC Act to acquire the banks or on a determination by the Board that the BHC Act does not apply to the acquisition."

While the maneuverings continued on the administrative front, the first federal court was asked to rule in this controversy. On July 5, 1983 plaintiff, along with others not party to this action, filed a complaint in the United States District Court for the Northern District of Illinois seeking declaratory and injunctive relief against the Comptroller. *Deerbrook State Bank, et al. v. Conover,* 568 F.Supp. 696 (N.D.Ill., 1983). In that suit, plaintiffs sought to enjoin the Comptroller from holding hearings or otherwise taking action on the Dimension applications until the Board had an opportunity to rule on the B.H.C.A. issues involved. The court denied plaintiffs' motion for a preliminary injunction on August 9, 1983 on the grounds that the plaintiffs had failed to show a reasonable likelihood of success on the merits and that the harm was "far too speculative to warrant the granting of a preliminary injunction." *Deerbrook State Bank v. Conover,* 568 F.Supp. 696, 700 (N.D.Ill., 1983). At the time of that ruling, the Comptroller had not yet conducted hearings on the Dimension proposal and, of course, had not made any preliminary rulings on the merits.[7] Thus, the court found that the requisite irreparable injury had not been demonstrated.

On May 9, 1984, the Comptroller handed down his written decision on the Dimension bank proposal. In his thirty page opinion, the Comptroller granted preliminary approval for a maximum of four Dimension banks and reserved judgment on the remainder of the applications. Decision of the Comptroller of the Currency on the Applications of Dimension Financial Corporation to Charter 31 National Banks in 25 States. The Comptroller held *inter alia,* that "the most important legal issue posed by the applications is the applicability of the Bank Holding Company Act...." The Comptroller went on to discuss the "very expansive definition of 'commercial loan'" in Reg. Y (promulgated January 5, 1984) as well as the November 15, 1983 letter from the Federal Reserve Board General Counsel. *See supra* page 951. Nevertheless, in light of Dimension's "commitment" not to engage in any activities within the expanded definition of commercial loan, *see supra* page 951, the Comptroller concluded that "the applications no longer can be said to pose substantial B.H.C.A. questions."

The I.B.A.A. responded to the preliminary charter approval by promptly renewing its inquiries at the Federal Reserve Board. In a May 18, 1984 letter, the I.B.A.A., through counsel, requested that the Board "reaffirm its intention to conduct its own investigation to determine whether the manner in which Dimension intends to operate its proposed bank subsidiaries complies with the BHC Act."

By letter of June 19, 1984, the Board, through its secretary, responded to the I.B.A.A.'s letter. The Board stated that it "intends to conduct a thorough inquiry into whether the proposed Dimension banks will be operated in a manner so as to comply with the Board's regulations on the bank definition. To this end, the staff plans to hold an informal hearing in order to develop the facts fully for review by the Board."

Shortly thereafter, on July 2, 1984, the instant case was filed by the I.B.A.A. in the Northern District of Illinois. The complaint, docketed June 3, 1982, sought a declaration that "the Comptroller has no jurisdiction ... to determine legal or factu-

---

**7.** This suit was ultimately dismissed without    prejudice for lack of ripeness.

al issues raised by the [Dimension] petition with respect to the Bank Holding Company Act, and that the Comptroller's purported determination in the Preliminary Charter Approval that Dimension could lawfully acquire the Proposed Bank Subsidiaries ... is unlawful, null, void and of no legal effect." The I.B.A.A. also seeks an injunction preventing the Comptroller from issuing a final charter or certificate of authority to commence business to any of the Dimension banks until the Federal Reserve Board determines the legality of the proposed banks under the Bank Holding Company Act.

Dimension moved to intervene as a defendant and was granted leave to do so on August 16, 1984.[8] The I.B.A.A. had moved for a preliminary injunction, but the Court postponed any ruling while it considered and then granted a motion to transfer to this District from the Northern District of Illinois.

Defendant Dimension has also filed a counterclaim, alleging antitrust violations,

on which this Court stayed proceedings. After transfer to this Court, the parties argued and briefed the defendants' motions to dismiss. Following the December 10th hearing on those motions, the Court took the motion to dismiss under advisement and requested that the parties file their memoranda on the merits of the case in the form of cross-motions for summary judgment. This allowed the Court to consolidate the preliminary motions with its rulings on the merits, *see* Fed.R.Civ.P. 65(a)(2), and, in the absence of material facts in dispute, provided for a more orderly analysis of the arguments of the parties.[9]

Finally, it must be noted that recent appellate litigation [10] involving parties to the present action has had some impact on the present case. Reg. Y, which broadened the definition of "commercial loan" and hence broadened the Federal Reserve Board's jurisdiction, *see supra* page 951, was challenged before the Tenth Circuit by a group of petitioners including Dimension Financial Corporation. On September 24, 1984,

---

**8.** Although the litigation in this Court focuses solely on the Dimension proposals, the Court takes notice of the broad economic and public policy impact of the nonbank bank issues. Due to a self-imposed moratorium, which lasted from April 1983 to October 1984, the Comptroller refrained from processing nonbank bank applications in order to give Congress an opportunity to act. Congress did not seize this opportunity and the nonbank applications continued to accumulate. As of October, 1984, there were over three hundred pending applications.

As the Tenth Circuit noted in *Dimension Financial Corp. v. Board of Governors of the Federal Reserve System*, 744 F.2d 1402 (1984), the Board's promulgation of Reg. Y was an attempt to slow the pace of the rapid transformations taking place in the financial services industry. This lawsuit shares the same objective, at least in part.

The Court does not mean to suggest that there is anything less than complete good faith in the positions of the parties. Nor does the Court intend to express any opinion on the wisdom or the soundness of the nonbank banks. Instead, the Court would suggest that all of the regulatory and judicial proceedings to date can serve as little more than expensive holding actions until Congress takes its turn in examining the changes in the industry and the regulatory impact of existing federal law. *See* Letter from C. Todd Conover, Comptroller of the Currency, to

Representative St. Germain, Chairman of the House Committee on Banking (April 5, 1983) (industry developments include changes in savings and loan industry, geographic and product restrictions of state law, and technological developments that make new products and delivery systems possible).

**9.** The only substantial ground for the defendants' motion to dismiss—mootness—is closely intertwined with the merits. Because of overlapping of preliminary (Rule 12) motions and the merits, the briefing of this case, which allowed the Court to consider the mootness, preliminary injunction, and summary judgment motions in a consolidated fashion, was particularly efficient.

**10.** The Court would also note that the I.B.A.A.'s litigation strategy has not been limited to one federal district court at a time. In a related action in the Middle District of Florida, the United States District Court recently entered a preliminary injunction preventing the Comptroller from issuing final charters to any nonbank bank on the grounds that a nonbank bank is not engaged in the "business of banking" within the meaning of the National Bank Act, 12 U.S.C. § 1, *et seq. Independent Bankers Association of America v. Conover*, No. 84–1403–CIV–J–12 (M.D.Fla. February 15, 1985). This holding has no effect on the issues before this Court.

the Court of Appeals for the Tenth Circuit issued its decision in that case. *Dimension Financial Corporation v. Board of Governors of the Federal Reserve System,* 744 F.2d 1402 (10th Cir.1984). The court held that Reg. Y, at least insofar as it redefined "commercial lending," 12 C.F.R. Part 225, § 225.2, was invalid and that the Board was enjoined from enforcing or implementing the regulation. *Id.* at 22. Based on this development, Dimension—joined later by the Comptroller—moved to dismiss this case for lack of subject matter jurisdiction on the grounds that the I.B.A. A.'s claim was now moot. It is to this argument that the Court must now turn.

### *Mootness*

■ The doctrine of mootness involves circumstances in which a federal court is divested of jurisdiction over an issue because of events subsequent to the filing of a claim. The Supreme Court has recently emphasized the Article III jurisdictional bases of the doctrine, *see e.g., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). It has been held that a "moot" case is beyond the jurisdiction of the federal courts because of the "case or controversy" requirement, *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983), or because the opinion in a moot case would be merely advisory. *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). Mootness can perhaps best be analyzed as a subclass of Article III standing issues viewed from a perspective that focuses on the time element. *See* Monahan Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384, *quoted in United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

In their motion, defendants suggest that the Tenth Circuit's ruling in *Dimension* that Reg. Y is invalid is the type of intervening event that renders plaintiff's claim moot. Defendants' argument in support of this position may be stated in simplistic terms as follows. First, according to the defendants, this is an action in which plaintiff seeks this Court's aid in getting the B.H.C.A. issue before the Federal Reserve Board so that the Board may apply Reg. Y and declare that the proposed Dimension subsidiaries are "banks" under the B.H. C.A. But—because of the *Dimension* opinion—the Federal Reserve Board is now precluded from doing what the plaintiff wants: declaring the proposed Dimension subsidiaries to be "banks" within the B.H. C.A. definition. Thus, say the defendants, plaintiff cannot as a matter of law obtain the relief originally sought and this case is moot.

This argument has some appeal. It is self-evident that when a judicial remedy such as an injunction becomes unnecessary, the claim is moot. *See Atherton Mills v. Johnston,* 259 U.S. 13, 42 S.Ct. 422, 66 L.Ed. 814 (1922) (suit to prevent discharge of minor under statute regulating work by minors becomes moot when plaintiff reaches majority). The same result obtains when the judicial remedy sought becomes not unnecessary but "impossible." *See e.g., Humboldt County v. United States,* 684 F.2d 1276, 1283 (9th Cir., 1982) (argument that road closing is premature because area not designated as wilderness is rendered moot when area so designated); *H.R. Porter Co. v. Metropolitan Dade County,* 650 F.2d 778, 782 (5th Cir.1981) (government contract claim seeking hearing on bid and injunction awarding contract to plaintiff was rendered moot by award of contract to third party).

Another line of cases holds that legislative or judicial modification of an essential element of a claim may render that claim moot. For example, amendment of a statute to allow the activity that the plaintiff claims is unlawful obviously renders the complaint moot. *See, e.g., Collins v. Hoke,* 705 F.2d 959 (8th Cir.1983). Similarly, in-

validation of a statute by a court may render a claim under that statute moot. *See Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

However, the Court believes that defendants' mootness argument in the present case is distinguishable from these lines of cases. In each of the mootness cases above, the intervening event directly affected the ability of the Court to render the relief sought regardless of the merits of the claim. The event had an effect on the controversy that made it unnecessary for the court to consider the merits.

In the present case, there has obviously been an intervening event: a change in the law, Reg. Y, that affects the merits of this controversy. Indeed, defendants' argument concerning the magnitude of this change is difficult to dispute. Nevertheless, while the invalidation of Reg. Y may have a precipitous effect on plaintiff's claims, it is not readily apparent that this effect is of the nature of a withdrawal of this Court's jurisdiction.

Defendants' arguments regarding mootness were well put, and perhaps it is a matter of slight degree to distinguish the jurisdictional effect of mootness from a similar, significant effect on the merits. *See* 13A Wright Miller & Cooper, Federal Practice and Procedure § 3533.3 ("a high degree of probability [that there will be no effective relief awarded] is often found, and rightly supports a finding of mootness").

However, defendants' arguments ultimately fall short of doing anything more than demonstrating that the invalidation of Reg. Y has weakened the plaintiff's case. The error in the defendants' argument lies in their characterization of the issues. This is not a case in which this Court must decide whether the application of Reg. Y would cause the Dimension subsidiaries to be treated as "banks" under the B.H.C.A. If it were, the invalidation of Reg. Y might

moot this lawsuit. However, the merits of the Reg. Y issue are not being argued here. Instead, the Court must decide whether an injunction should issue to stay the hand of the Comptroller while the Federal Reserve Board considers the merits [11] of the Dimension proposal. The relief sought is not the application of Reg. Y, but a declaration of Federal Reserve jurisdiction. Reg. Y affects this Court's determination of the Federal Reserve Board's jurisdiction, but it does so on the merits. The invalidation of Reg. Y does not render this Court's ruling unnecessary or moot.

*The "Substantial Issue" Test*

As a preliminary matter, the parties would agree that in *some* circumstances the federal courts have the power and authority to enjoin the Comptroller's issuance of final bank charters in order to allow the Federal Reserve Board an opportunity to exercise its jurisdiction over B.H.C.A. issues. The seminal case in this area is *Whitney National Bank v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), which held that the Comptroller may not issue a final charter to a proposed bank where "substantial" B.H.C.A. questions exist. The *Whitney* court based this holding on the premise that as long as a B.H.C.A. issue was pending before the Federal Reserve Board, the applicant would not be "lawfully entitled to commence the business of banking." 379 U.S. at 426, 85 S.Ct. at 560. The *Whitney* doctrine has been applied not only in cases where an applicant has submitted an application for Federal Reserve approval, 12 U.S.C. § 1842, but also in cases where *no* application is pending. *See Marshall & Ilsley Corp. v. Heimann,* 652 F.2d 685, 699–701 (7th Cir.1981) (federal courts may issue injunction against Comptroller to allow Board opportunity to review B.H.C.A. issues); *American Bank of Tulsa v. Smith,* 503 F.2d 784, 784–787 (10th Cir.

---

**11.** Reg. Y, the definition of commercial loan, and the definition of bank all play important

roles in this determination but the legal issues and standards are not identical.

1974). (Comptroller may be enjoined although no application pending.)[12]

Before the Court turns to the issue of whether such a "substantial" B.H.C.A. issue exists, several preliminary matters should be considered. Plaintiff has supplemented its cross-motion for summary judgment with a Motion for an Order of Referral to the Federal Reserve Board.[13] Under the I.B.A.A.'s proposed order, the Comptroller would be enjoined from issuing final charters until the Federal Reserve Board "first determines that Dimension Financial Corporation can lawfully acquire the proposed bank subsidiaries under the Bank Holding Company Act." Because the Comptroller's decision conditions final approval of Dimension's proposal on Federal Home Loan Bank Board ("F.H.L.B.B.") approval, the proposed order triggers referral of the B.H.C.A. issues to the Federal Reserve Board on such F.H.L.B.B. approval. If this occurs, the order provides that the Federal Reserve shall file a written report on its "determination" of the B.H.C.A. issues within thirty days.

Prior to applying the "substantial issue" test, several issues relating to this I.B.A.A. motion must be considered.

■ At the outset, it is clear that a district court has no authority to issue orders mandating action or inaction by the Federal Reserve Board.[14] Although this Court might enjoin the Comptroller, the Board is subject to direct review in the Court of Appeals. 12 U.S.C. § 1848. It is the law of this Circuit that where a statute commits agency action to direct review in the Court of Appeals, any suit that might affect that future jurisdiction is "subject to the *exclusive* review of the Court of Appeals." *Telecommunications Research and Action Center v. Federal Communications Commission*, 750 F.2d 70, 75 (D.C. Cir., 1984).

■ The I.B.A.A.'s proposed order would require a Board decision on the merits of the B.H.C.A. issues in the Dimension proposal. Such a Board decision would, of course, be a final order subject to appellate review. Thus, this Court would be taking action to affect the Court of Appeals' future jurisdiction over the Board; such an

---

**12.** The Comptroller has suggested that the *Tulsa* opinion is incorrectly decided and that it misapplies the *Whitney* doctrine by holding that the Comptroller might be enjoined in situations where no application is pending before the Board. But, the absence of an application by the proposed banks should have no impact on the Supreme Court's admonition that the "statutory mode of review [i.e., with B.H.C.A. issues exclusively before the Board] be adhered to notwithstanding the absence of an express statutory command of exclusiveness." *Whitney* 379 U.S. at 422, 85 S.Ct. at 558. Indeed, the Court stated that "[o]pponents of the opening of a new bank by a bank holding company must first attack the arrangement before the Board...." *Id.* The plaintiff's petition for Board review, *see supra* page 951, constitutes such an attack, and it would be perverse if bank applicants were allowed to avoid Federal Reserve Board review as well as federal judicial authority merely by refusing to file an application before the Board.

**13.** Plaintiff sought a referral by which the Board would be directed to advise the Court in writing (1) whether "substantial" B.H.C.A. issues exist, and (2) what the Board's resolution of those issues would be on the merits. By letter of January 4, 1985, the Federal Reserve Board, through counsel, advised the Acting Assistant

Attorney General, Civil Division, that the Board's "current view" was that "it intends to conduct a thorough inquiry into whether the proposed Dimension banks will be operated in a manner so as to comply with the Board's regulations on the definition of 'bank' for purposes of the Act." According to the I.B.A.A., this letter is conclusive proof that there is a "substantial" B.H.C.A. issue, or, at least, that the Federal Reserve Board believes that a "substantial" issue currently exists. Thus, the plaintiff has argued that this Court is bound by the Board's "position."

**14.** The motion itself uses the language of "direct[ing]" the Board to advise the Court, although the proposed order does not expressly require Board response. In any case, the overall language and tone of the I.B.A.A.'s position suggests that this Court issue an order to the Board. Even if the motion were construed otherwise, the Board would effectively be ordered to act because under the terms of the order final charter approval would be put on indefinite "hold" pending Board action.

It is, in fact, this concern of the Court—that inaction by the Board could freeze progress on the Dimension proposals—that may have prompted the I.B.A.A. to propose the referal as an alternative to the indefinite injunction.

order is improper and this Court lacks jurisdiction to enter it. *See Telecommunications Research* at 76–77 (exclusive appellate jurisdiction over final agency orders extends to non-final orders; district court lacks jurisdiction to compel agency action); *Southwest Bank of Fort Worth v. Hermann,* No. 80–1115, mem. op. at 4, (D.D.C. March 25, 1981) (district court has no jurisdiction over Federal Reserve Board). For this reason alone, the motion for an order of referral should be denied.

■ The I.B.A.A. has also argued that the Federal Reserve Board has conclusively determined that the Dimension proposal raises a substantial B.H.C.A. issue and that this Court is bound by that determination. This contention is incorrect as a matter of fact and law.

The most recent comment of the Federal Reserve Board [15] spoke directly to the "issues ... raised in the above-captioned case." In that letter, the Board took the position that "it intends to conduct a thorough inquiry into whether the proposed Dimension banks will be operated in a manner so as to comply with the definition of 'bank' for purposes of the [B.H.C.] Act." The letter then goes on to quote the F.H.L.B.B.'s position that the proposal raises "serious and very complex policy issues." The letter ends as follows:

> The staff believes that it would be most useful to undertake a review of the lawfulness under the BHC Act of Dimension's acquisition of the proposed national banks after any approval of the Dimension proposal by the Bank Board. This scheduling will avoid potentially unnecessary expenditure of administrative resources and will assure that a Board decision is made in the light of facts that are more timely and relevant in relationship to the possible opening for business by the proposed banks.

It is of course preferable that matters such as this be resolved by cooperation among the interested agencies with referral to the Board of issues that require resolution under the BHC Act. In any event, the courts have recognized that the Board's jurisdiction with respect to matters arising under the BHC Act is paramount. *E.g., Board of Governors v. First Lincolnwood Corp.,* 439 U.S. 234, 250 [99 S.Ct. 505, 514, 58 L.Ed.2d 484] (1978). The Board, therefore, has at any time the authority to determine whether any particular banking institution is a bank for purposes of the BHC Act. Letter from Michael Bradfield, General Counsel, Board of Governors of the Federal Reserve System, to Richard K. Willard, Acting Assistant Attorney General, Civil Division (January 4, 1985).

Any mention of the Board's belief that a "substantial" B.H.C.A. question still exists is conspicuously absent from this letter. The Court does not believe this lack of precision in the language of the letter was an oversight, nor is it possible that the Board, or its counsel, is unaware of the "substantial" question test of *Whitney*. In fact, the November 15, 1983 letter of the Board, also written by the General Counsel, stated unequivocally that "there is a substantial question whether the Dimension banks would be 'banks' for the purpose of the BHC Act." Of course, at that time the expanded definition of "commercial loan" under Reg. Y was still in effect.

Assuming *arguendo* that the Board had declared that a "substantial" B.H.C.A. question currently exists, this Court would not be bound by such a declaration as a matter of law. As noted *supra*, the plaintiff argues that this Court may not entertain any "collateral attack" upon the Federal Reserve Board's determination. It is the plaintiff's position that the federal courts may make only preliminary judgments on the existence of "substantial" B.H.C.A. is-

---

**15.** It is perhaps incorrect to attribute these remarks to the Board. Only the Board of Governors or the Chairman would, in a technical sense, speak for the agency. However, in the absence of suggestion to the contrary, the Court will assume that the comments of the General Counsel fairly reflect the consensus of the Board of Governors of the Federal Reserve System.

sues in cases where the Board has not spoken. Once the Board has spoken, says plaintiff, its actions are not subject to review in this Court, *see* B.H.C.A. § 9, 12 U.S.C. § 1848, and this Court may not undertake any *de novo* review of the Board's position, including its belief that substantial B.H.C.A. issues are raised by the Dimension proposal.

A brief consideration of the circumstances of this case reveals the legal and logical fallacies of plaintiff's argument. Initially, Section 9 of the B.H.C.A., which provides for review of Board orders in the Courts of Appeals is inapplicable here because the Board has not entered any *order*. Indeed, the Board has taken no action for this Court to review—*de novo* or otherwise.

In addition, if in fact the district courts were bound by the Board's determination in this situation, a highly unusual outcome would result. *Anytime* the Board "declared" the existence of a substantial B.H. C.A. issue, a federal court could be compelled to enter an indefinite injunction against the Comptroller until the Board decided the issue. Not only is this a bizarre outcome in terms of jurisprudential theory, it is also an untenable result in administrative practice. Conflicts between the federal bank regulators are common,[16] if not inevitable, and the I.B.A.A.'s theory would make the federal courts the "automatic" ally of the Federal Reserve Board. In fact, the Board need not even file a lawsuit as long as it "declares" its position.

The case law also fails to support the I.B.A.A.'s position. It is true that the district courts have no jurisdiction to pass on the *merits* of a bank holding company proposal. *Whitney*, 379 U.S. at 419–420, 421–22, 85 S.Ct. 551, 557, 558, 13 L.Ed.2d 386.

That power belongs exclusively to the Board. *Id.* at 419, 85 S.Ct. at 557. At the same time, the Comptroller clearly has jurisdiction to charter national banks without awaiting Board approval as long as those charter applications pose no substantial B.H.C.A. questions. *Marshall & Ilsley Corporation v. Heimann*, 652 F.2d 685, 701 n. 27 (7th Cir.1981), *cert. denied*, 455 U.S. 981, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982); *American Bank of Tulsa v. Smith*, *supra*, at 786. Further, the Comptroller must have jurisdiction to determine, at least initially, whether such an issue exists. Otherwise, the Comptroller's office would be paralyzed by the mere hint of a B.H. C.A. issue. Moreover, if the Comptroller can determine whether the initial charter application raises substantial B.H.C.A. issues, then this Court must also have the power to determine whether such issues exist and whether an injunction should issue. "The mere presence of an objection [under the B.H.C.A.] should not give rise to this extraordinary use of court process. However, if the matter appears to be a substantial problem ... it would seem that the spirit of the *Whitney* case requires that there be action." *American Bank of Tulsa v. Smith*, 503 F.2d 784, 789 (10th Cir. 1984). Thus, although the federal courts "do not have jurisdiction to determine the merits" of B.H.C.A. issues, they "do have the authority to determine whether or not the issue is substantial or frivolous" and whether the Comptroller should be enjoined while the Board considers it. *American Bank of Tulsa* at 786.

■ This Court finds that the I.B.A.A. has not proved the existence of any substantial Bank Holding Company Act issue.[17]

---

**16.** *See* Rival Bank Regulators Agree Only To Disagree On Most Major Issues, Wall Street Journal, Jan. 23, 1985, at 1, col. 6.

**17.** In so holding, the Court takes notice of the obvious fact that the Board has not taken advantage of its ample opportunity to act on the *Dimension* proposal. Although the *Whitney* test is not time-bound, it appears that the original concern was that the Board had "not had an *opportunity* to determine" the issue presented.

*Whitney*, 329 U.S. at 425, 85 S.Ct. at 560 (emphasis added). *See also American Bank of Tulsa*, 503 F.2d at 789 (court should consider "whether the Federal Reserve Board should have an opportunity to consider [B.H.C.A. issue]"). In the present case, the Board has enjoyed such an opportunity. It has been over twenty-one months since the I.B.A.A. initially petitioned the Board to hold hearings on the Dimension proposal. It is difficult to suggest that this Court

Obviously, plaintiff's strongest argument for the existence of a substantial B.H.C.A. question was premised on Reg. Y. In view of the current status of that regulation,[18] it is unnecessary to consider whether a substantial B.H.C.A. issue was presented prior to the invalidation of Reg. Y.

Plaintiff argues, however, that substantial B.H.C.A. issues are presented on grounds not related to the definition of commercial loan as dealt with in Reg. Y. The Court does not find these arguments to be compelling, and in fact, the focus of the I.B.A.A.'s arguments have always been on the Reg. Y issues.

Plaintiff argues, for example, that the proposed Dimension Banks might "provide their customers with access to commercial loans extended by Valley Federal or a sister bank which does not accept demand deposits." Citing *U.S. Trust Corp.*, 70 F.R.B. 371 (1984), the I.B.A.A. argues that such an arrangement would constitute a "unitary operation" which would cause Dimension to be a "bank holding company" for purposes of the B.H.C.A. Aside from the speculative nature of this argument, and the absence of any evidence in the record, Board investigation of any such "conduit" loans must necessarily await the operation of the banks.[19] This is so because the allegations involve potential illegal activity that occurs only in the course of operating the banks. It would be inequitable to enjoin the chartering of the Dimension banks because of allegations of a possible illegal "unitary" operation when such allegations could only be examined by the Board if the proposal is allowed to proceed. Mere allegations of future wrongdoing never justify injunctive relief.

Plaintiff also argues that it will be "necessary for the Federal Reserve Board to apply and construe applicable state banking laws...." The Board does indeed have authority to interpret state law, *see First Interstate Bancorp.*, 70 F.R.B. 660 (1984), but such authority is limited to situations where the Board is dealing with bank holding companies within its jurisdiction. In this case, the issue of applicability of the B.H.C.A. to the Dimension banks is at the very heart of the dispute and the I.B.A.A.'s state law argument assumes the existence of the fact at issue.

Based on the foregoing, the Court holds that plaintiff has failed to establish that a substantial B.H.C.A. issue exists which would justify the issuance of an injunction against the Comptroller. The Comptroller has not unlawfully "decided the merits" of *any* B.H.C.A. controversies. Instead, the Comptroller correctly decided that the Dimension proposal did not in its present form raise any substantial B.H.C.A. issues, and therefore did not merit referral to the Federal Reserve Board. The Comptroller acted correctly and was within the jurisdiction of his office. An appropriate Order will issue in accordance with the terms of this opinion.

### ORDER

In accordance with the Memorandum Opinion filed by the Court this 27th day of February, 1985, it is

ORDERED that:

1) Defendants' Motion to Dismiss for lack of subject matter of jurisdiction is denied;

needs to enjoin the Comptroller in order to give the Board time to act when no action has been taken in over a year and a half.

**18.** A Petition for a Writ of Certiorari was filed by the Federal Reserve Board with the Supreme Court seeking review of the Court of Appeals decision in *Dimension Financial Corporation v. Board of Governors*, 744 F.2d 1402 (10th Cir. 1984). Of course, the Tenth Circuit opinion remains valid and binding in the absence of further action by the Supreme Court. The Board's motion to stay the mandate was denied

and the mandate was issued on February 14, 1985. Thus, the Board is currently enjoined from enforcing Reg. Y.

**19.** The Board suggested as much in its letter of June 19, 1984, *see supra* page 957, when it stated that it would conduct an "informal hearing" to determine "whether the proposed Dimension banks will be *operated* in a manner so as to comply with the Board's regulations...." (emphasis added)

2) Plaintiff's Motion for a Preliminary Injunction is denied;

3) Plaintiff's Motion for Summary Judgment or for an Order of Referral to the Board of Governors of the Federal Reserve System is denied;

4) Defendants' Motion for Summary Judgment is granted and judgment shall be, and is, entered for the defendants on all counts of the complaint; and

5) The Stay of Proceedings on Defendant Dimension's Counterclaim is hereby lifted.