Mae TRUSSELL, Plaintiff-Appellant,

v.

LITTON SYSTEMS, INC.,
Defendant-Appellee.

Robbie TRUSSELL, Plaintiff-Appellant,

v.

FRIGITEMP CORPORATION, et al.,
Defendant-Appellee.

No. 84–4405
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1984.

As Amended Feb. 14, 1985.

Jess H. Dickinson, Joe Sam Owen, Gulfport, Miss., for plaintiffs-appellants.

Hopkins, Logan, Vaughn & Anderson, Robert H. Harper, Gulfport, Miss., for intervenor.

Wiesenburg & Reed, Karl Wiesenburg, William F. Jordan, Pascagoula, Miss., for defendants-appellees.

Before GEE, JOHNSON and DAVIS, Circuit Judges.

**W. EUGENE DAVIS, Circuit Judge:**

This is an appeal from the district court's dismissal of plaintiff's claims under Mississippi tort law and under Section 905(b) of the Longshoremen's and Harbor Workers' Compensation Act (LSHWA). We affirm the dismissal of the section 905(b) claim and reverse the dismissal of the state tort action.

### I.

This case was submitted to the district court on stipulated facts. Appellant, Mae Trussell, was employed by Frigitemp Marine Corp., a subcontractor of defendant, Litton Industries. On October 27, 1978, she was injured when she fell from a ladder while working on the LHA–5, a vessel being constructed by Litton for the United States of America. Under the contract between Litton and the United States, the United States had title to the partially completed hull.

■ At the time of the accident, the LHA–5 was under construction on a building platform in a buildingway within the shipyard. It had not been launched and was between forty and sixty percent completed.[1] The vessel was launched twenty-eight days after the accident.

The district court dismissed plaintiff's action under section 905(b)[2] on three grounds: (1) the incompleted hull was not a vessel, (2) Litton was not the vessel owner or the owner pro hac vice, (3) plaintiff's injuries were caused by fellow shipbuilders.

### II.

■ We first consider the district court's holding that LHA–5 was not a vessel for the purposes of 33 U.S.C. § 905(b). We agree with appellant that the district court erred in failing to apply the teaching of *Lundy v. Litton Systems, Inc.*, 624 F.2d 590 (5th Cir.1980). In *Lundy* we held that "vessel" has a special meaning under the LSHWA because the term is defined in the Act.[3] We concluded that a vessel for the purposes of LSHWA includes any partially-constructed vessel on which individuals covered under the act are working. *Lundy, supra*, at 592. Under the *Lundy* test, LHA–5 is a vessel for the purposes of an action under section 905(b) and the district court's contrary conclusion is erroneous.

### III.

■ Appellant next contends that the trial court erred in holding that plaintiff's 905(b) action was precluded because Litton was not the owner or owner pro hac vice of the LHA–5 at the time of plaintiff's injury.[4]

1. We specifically note that federal jurisdiction of plaintiffs' action under 33 U.S.C. § 905(b) and Mississippi law is founded on diversity of citizenship. We are in complete agreement with *Christoff v. Bergeron Industries, Inc.*, 748 F.2d 297 (5th Cir.1984), that a suit under 905(b) for injury to a shipbuilder on a partially completed vessel located on land does not invoke the court's admiralty and maritime jurisdiction. Since the parties in this case are diverse, however, federal jurisdiction was never in question.

2. 33 U.S.C. § 905(b) states:

    (b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. . . .

3. The definition section of the LSHWA provides that "[t]he term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment . . ." 33 U.S.C. § 902(21) (West 1978).

4. Section 905(b) authorizes an action against the "vessel." Vessel is defined to include: "[v]essel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, . . ." 33 U.S.C. § 902(21) (West 1978).

Under the terms of the contract between the United States and Litton, the United States was the owner of the uncompleted vessel. The question narrows therefore to whether Litton was the owner pro hac vice of the LHA-5. We held in *Hess v. Port Allen Marine Service, Inc.*, 624 F.2d 673 (5th Cir.1980) and in *Bossard v. Port Allen Marine Service*, 624 F.2d 671 (5th Cir.1980) that a contractor repairing a ship for an owner is not an owner pro hac vice of the vessel. In *Bossard*, we noted:

[F]or such ownership to be found, it is generally necessary for the defendant's relationship to be that of shipowner-bareboat charterer. Such a relationship is materially different from that of a shipowner-ship repairer or shipowner-stevedore. *Rao v. Hillman Barge and Construction Co.*, 467 F.2d 1276, 1277 (3d Cir.1972). "[T]he charterer takes over the ship, lock, stock and barrel, and mans her with his own people. He becomes ... the owner *pro hac vice*, just as does the lessee of a house and lot, to whom the demised charterer is analogous." G. Gilmore & C. Black, *The Law of Admiralty* § 4-1 at 194 (2d ed. 1975). *See Eskine v. United Barge Co.*, 484 F.2d 1194, 1196 (5th Cir.1973). Though the ship repairer is a bailee, and to that extent is like a charterer, he plainly does not have the degree of control over the vessel that the charterer, the owner *pro hac vice*, has.

624 F.2d 671 at 672–73.

The *Bossard* rationale applies with equal force to this case. Litton contracted to construct the vessel. It had no right to use it for any other purpose. A shipbuilder—like a ship repairer—does not have the unrestricted use of a vessel required of an owner pro hac vice. Consequently we agree with the district court that Litton was not the owner pro hac vice of the LHA-5 and for this reason is not subject to liability to plaintiff under section 905(b).

### IV.

■ Even if Litton is subject to suit as vessel charterer, we agree with the district court's conclusion that plaintiff's section 905(b) action is barred because her injuries were caused by fellow shipbuilders.[5] The district court's conclusion was bottomed on the unambiguous language of the act and our decision in *Cavalier v. T. Smith and Son, Inc.*, 668 F.2d 861 (5th Cir.1982).

The pertinent portion of 33 U.S.C. 905(b) provides:

[I]f such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel....

We interpreted this language in *Cavalier* in which a longshoreman was injured while engaged in loading a vessel owned by his employer. We concluded that the plaintiff longshoreman, in order to recover under section 905(b), is required to establish negligence against his employer in its capacity as vessel owner. We affirmed the judgment in favor of the defendant because the defendant's activity, out of which the injury occurred, was the performance of stevedoring services.

Litton was under contract to construct the LHA-5 and all its efforts were directed toward that purpose. Litton's fault, if any, must arise from shipbuilding, the only activity in which Litton was engaged aboard the LHA-5.

### V.

■ Although no reason was given by the district court for dismissing the state tort claim, we assume the district court concluded that Litton was shielded from a tort action by the LSHWA. Under the teaching of *Washington Metropolitan Area Transit Authority v. Johnson*, ——

**5.** It was stipulated that plaintiff's injuries were caused by Litton personnel.

U.S. ——, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), Litton may well have enjoyed such immunity. However, since the judgment was entered by the district court, *Washington Area Transit Authority* has been legislatively overruled[6] and the amendment was made applicable to pending cases.[7] In light of the September 28, 1984 amendment, the dismissal of the state tort action must be reversed.

AFFIRMED in part, REVERSED in part and REMANDED.

---

6. Act of September 28, 1984, Pub.L. No. 98–426 § 4(b) provides:

(b) Section 5(a) is amended by adding at the end thereof the following new sentence: "For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 4."

7. Act of September 28, 1984, Pub.L. No. 98–426 § 28(a) provides:

Section 28(a). Except as otherwise provided in this section, the amendments made by this Act shall be effective on the date of enactment of this Act and shall apply both with respect to claims filed after such date and to claims pending on such date.