**AVONDALE SHIPYARDS, INC.,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**INSURED LLOYD'S,**
**Defendant-Appellant,**
**Cross-Appellee.**

No. 85–3115.

United States Court of Appeals,
Fifth Circuit.

April 14, 1986.

---

Francis P. Accardo, Montgomery, Barnett, Brown & Read, Terry J. Freiberger, New Orleans, La., for defendant-appellant, cross-appellee.

Edward J. Koehl, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert T. Lemon, II, New Orleans, La., for Avondale.

John T. Holmes, New Orleans, La., for Universal Systems, Inc.

Before GARWOOD, PATRICK E. HIGGINBOTHAM, and W. EUGENE DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Avondale Shipyards, Inc. (Avondale) brought this diversity suit against Universal Systems, Inc. (Universal) and its insurer, Insured Lloyd's (Lloyds), seeking contractual indemnity from Universal for sums Avondale had paid in settlement of a prior personal injury action brought against it by Frank King (King), a Universal employee who was injured while working on a ship then under construction at Avondale's shipyard. Avondale likewise sought recovery against Lloyds on this theory by reason of the contractual indemnity portion of the liability insurance policy Lloyds had issued to Universal. Additionally, Avondale requested a declaratory judgment that it was covered respecting the King claim as an additional insured under the comprehensive general liability portion of the same Lloyds insurance policy. On motions for summary judgment filed by all parties, the district court ruled that Avondale was covered by the comprehensive general liability portion of the Lloyds policy, but was not entitled to contractual indemnity from Universal or to recovery on that theory from Lloyds. On this appeal by Lloyds and cross-appeal by

Avondale, we affirm the district court's determination as to the comprehensive general liability coverage, but reverse its ruling denying Avondale contractual indemnity recovery.

### Facts and Proceedings Below

On December 12, 1980, King, a Universal employee, was injured while working as a shipfitter on the S/S OGDEN DYNA-CHEM, a vessel being constructed by Avondale for Ogden Shamrock Transport, Inc. at the Avondale shipyard. King's injury arose when he fell down a stairway on the ship allegedly as a result of stepping in a greasy substance on the deck. The OG-DEN DYNACHEM had been removed from its shoreside ways and was positioned on a dry-dock afloat in the Mississippi River. At the time of King's accident, the vessel was approximately 74 percent complete; it was not capable of self-propulsion, but was able to float without assistance.

King's work as a Universal employee at the Avondale shipyard was pursuant to a contract in which Universal agreed to provide shipfitters to Avondale. The contract obligated Universal to indemnify Avondale against any claim for personal injury aris-

ing out of or connected with the work performed by Universal on or about Avondale's premises. In addition, Universal was required to obtain a comprehensive general liability policy naming Avondale as an additional insured and providing insurance to cover Universal's indemnity obligation. Pursuant to this agreement, Universal obtained a comprehensive general liability policy from Lloyds designating Universal as the named insured and Avondale as an additional insured. The policy also covered Universal's indemnity obligation. Avondale used Universal employees, including King, in building the OG-DEN DYNACHEM for Ogden Shamrock Transport, Inc., the actual owner of the vessel and apparently a sister corporation of Avondale.

King filed suit in December 1981 against Avondale in the United States District Court for the Southern District of Mississippi to recover damages of $300,000 for his December 12, 1980 injuries. In that action, King asserted that Avondale was negligent and liable for negligence as a "vessel" pursuant to 33 U.S.C. § 905(b).[1]

---

1. Longshoreman's and Harbor Workers' Compensation Act (LHWCA), section 5(b), 33 U.S.C. § 905(b), provides in part:

   "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void."

   For purposes of section 905(b), section 902(21) defines "vessel" as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, *owner pro hac vice*, agent, operator, charter or bare boat charterer, master, officer, or crew member." (Emphasis added.)

   Section 905(b) was amended September 28, 1984, by Pub.L. 98–426, § 5(a)(1), 98 Stat. 1641. Section 902(21) was amended by Pub.L. 98–426, § 5(a)(2). These amendments apply with respect to any injury after September 28, 1984. Pub.L. 98–426, § 28(a).

   A "person covered under this chapter" (chapter 18 of Title 33, U.S.Code; the LHWCA), as referenced in the first sentence of section 905(b), includes, subject to other conditions and exceptions not presently relevant, "any longshoreman ... and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker...." 33 U.S.C. § 902(3).

   King's suit alleged that he was a citizen of Mississippi and that Avondale was a foreign corporation not licensed to do business in Mississippi, and it also asserted maritime jurisdiction and jurisdiction under section 905(b). *See generally Hollister v. Luke Construction Co.*, 517 F.2d 920, 921 (5th Cir.1975); *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113, 116–18 (5th Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *Lundy v. Litton Systems, Inc.*, 624 F.2d 590 (5th Cir.1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981); *Russell v. Atlantic & Gulf Stevedores*, 625 F.2d 71, 72 (5th Cir.1980); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173 (5th Cir. 1984); *Hall v. Hvide Hull No. 3*, 746 F.2d 294 (5th Cir.1984), *cert. denied*, — U.S. ——, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985); *Christoff v. Bergeron Industries, Inc.*, 748 F.2d 297 (5th Cir. 1984); *Trussell v. Litton Systems, Inc.*, 753 F.2d 366 (5th Cir.1984); *Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634 (5th Cir.1985).

Avondale demanded defense and indemnity from Lloyds and Universal; Lloyds denied coverage to Avondale, but provided a defense. In the King litigation, the district court, in July 1982, entered an order granting a partial, interlocutory summary judgment on the issues of ownership and status of the OGDEN DYNACHEM. In this order, the court ruled that the OGDEN DYNACHEM was a vessel for purposes of section 905(b) and that the vessel was under Avondale's care and control at the time of the accident, making Avondale the vessel's owner *pro hac vice* for purposes of section 905(b). Almost two years after the partial summary judgment order was entered, a settlement was reached with King for $120,000, which was jointly funded by Avondale and Lloyds. In June 1984, the district court signed a final judgment approving the settlement.

In August 1983, during the course of the King litigation, Avondale filed the present suit against Lloyds and Universal in the United States District Court for the Eastern District of Louisiana, seeking to establish insurance coverage by Lloyds for Avondale's liability to King and to recover full contractual indemnity from Universal plus all costs, expenses, and attorneys' fees incurred by Avondale in both the King litigation and this action. Lloyds denied coverage to Avondale based on a "watercraft exclusion" contained in the comprehensive general liability policy, which excluded coverage for liabilities arising from vessel ownership.[2] Lloyds contends that the district court's determination in the King litigation that Avondale was *pro hac vice* owner of the OGDEN DYNACHEM brings it within the scope of this exclusion. Similarly, Universal bases its denial of indemnity on Avondale's status as *pro hac vice* owner because section 905(b) bars claims

for contractual indemnity by such owners against employers of persons injured on such vessels.

As part of the settlement of the King litigation, Avondale and Lloyds agreed that the outcome of the present declaratory judgment action would determine the responsibility for the settlement payment made to King. In the instant litigation, the parties agreed at a pretrial conference that the insurance coverage issue between Avondale and Lloyds as well as Avondale's contractual indemnity claim against Universal could be resolved by motions for summary judgment. In December 1984, the district court in the case at bar, acting on cross-motions for summary judgment, ruled that Avondale had insurance coverage as an additional named insured under the comprehensive general liability policy issued by Lloyds to Universal. The court reasoned that, although in its view Avondale was collaterally estopped by the determination in the King litigation that Avondale was *pro hac vice* owner of the vessel for purposes of section 905(b), this status under section 905(b) was not coextensive with the meaning of "owner" under the watercraft exclusion. The court determined that Avondale was not an owner of the vessel for purposes of the exclusion and hence was covered by the policy. The district court, however, ruled that Avondale could not recover for contractual indemnity against Universal or Lloyds, because under section 905(b) an indemnification agreement between the employer of an injured worker and the *pro hac vice* owner of a vessel is invalid.

Lloyds appeals the district court's determination that Avondale is covered by its comprehensive general liability policy. Avondale cross-appeals the district court's

---

**2.** The watercraft exclusion in the Lloyds comprehensive general liability policy provides:

"This insurance does not apply:

" . . . .

"to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

"(1) any watercraft owned or operated by or rented or loaned to any insured, or

"(2) any other watercraft operated by any person in the course of his employment by any insured;

"but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named insured; . . . . "

denial of recovery for contractual indemnity.

## Discussion

*Comprehensive General Liability Policy*

Lloyds challenges the district court's finding that *pro hac vice* ownership status under section 905(b) is not coextensive with the meaning of ownership as used in the watercraft exclusion of its comprehensive general liability policy. We do not reach that issue. Avondale argues that it was not collaterally estopped from relitigating *pro hac vice* ownership because the previous King litigation was resolved by a monetary settlement approved in a consent judgment. Moreover, Avondale asserts that the previous determination was incorrect because Avondale lacked the necessary relationship to the vessel to establish *pro hac vice* ownership. Finding that Avondale was not collaterally estopped by the King litigation and was not the *pro hac vice* owner of the OGDEN DYNACHEM, we affirm the district court's conclusion that the watercraft exclusion was inapplicable and that Avondale was covered by the comprehensive general liability policy.

(a) King litigation preclusion

■ The July 12, 1982 order of the district court, granting partial summary judgment that the OGDEN DYNACHEM was a vessel and that Avondale was its *pro hac vice* owner for purposes of King's section 905(b) action against Avondale, was not a final judgment for purposes of either true *res judicata* or collateral estoppel.[3] As we said in *International Union of Operating Engineers v. Sullivan Transfer, Inc.,* 650 F.2d 669, 676 (5th Cir.1981), "[t]he requirement of finality applies just as strongly to collateral estoppel as it does to res judicata."[4] *See also, e.g., White v. World Finance .of Meridian, Inc.,* 653 F.2d 147, 149–52 (5th Cir.1981) (reciting "final judg-

ment" requirement for both claim and issue preclusion). This partial summary judgment order did not even determine Avondale's liability—there being no determination either of fault on its part or of causation—much less King's damages, and hence was interlocutory and not appealable. *Cf.* Fed.R.Civ.P. 56(c) (summary judgment on liability alone "interlocutory in character"). Not only is such an order not appealable, but it remains within the plenary power of the district court to revise or set aside in its sound discretion without any necessity to meet the requirements of Fed.R.Civ.P. 60(b). *Zimzores v. Veterans Administration,* 778 F.2d 264, 266–67 (5th Cir.1985). And, obviously, King's claim against Avondale could not be said to merge into such an order. Nor can it be said that the order itself determines matters which are "a critical and necessary part of" a judgment. *See Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 862 (5th Cir.1985).

With respect to such interlocutory, partial summary judgments, 6 Part 2 Moore's *Federal Practice* ¶ 56.20[3.–4] states:

"Suppose, though, the court makes a summary adjudication. What is its effect? On the entry of a final summary judgment that judgment, which is a judgment on the merits, will have the same effect, including that of res judicata, as any other final judgment. But suppose the court makes a summary adjudication of a part, but less than all, of a claim. As we have seen this adjudication is interlocutory and while the court should enter an order embodying what it has adjudicated and specifying what issues remain for trial, it should not attempt to enter a final judgment. Since if the trial court enters only an order, as it should do, this order being interlocutory is subject to revision by the trial court and

---

**3.** In *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535 (5th Cir.1978), we noted that *"res judicata,* as the term is sometimes sweepingly used" embraces both " 'claim preclusion,' or true *res judicata"* and "collateral estoppel or 'issue preclusion.' "

**4.** We apply federal law to the question of the *res judicata* or collateral estoppel effect of prior federal court proceedings, regardless of the basis of federal jurisdiction in either the prior or the present action. *See Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 862 (5th Cir. 1985).

does not have any res judicata effect." *Id.* at 56-1228 (footnotes omitted).[5]

We have likewise throughout the years on several occasions recognized that such partial summary judgment orders lack the finality necessary for preclusion. *See Golman v. Tesoro Drilling Corp.,* 700 F.2d 249, 253 (5th Cir.1983) ("An order granting partial summary judgment is interlocutory; it has no res judicata or collateral estoppel effect."); *United States v. Horton,* 622 F.2d 144, 148 (5th Cir.1980) ("the ruling on the motion for partial summary judgment ... is not immutable and has no res judicata effect"); *Travelers Indemnity Company v. Erickson's, Inc.,* 396 F.2d 134, 135–36 (5th Cir.1968) (an order which "granted a motion for a partial summary judgment" is "an order of the type described in Rule 56(d)" and "[s]uch an order is subject to revision by the trial court and has no res judicata effect"); *New Amsterdam Casualty Co. v. B.L. Jones & Co.,* 254 F.2d 917, 919 (5th Cir.1958) (though styled a "Judgment," nevertheless "an order under F.R. C.P. 56(d)" making "partial interlocutory adjudication of part of the counterclaim" is "an order [that] has no res judicata effect and is subject to continuing change, modification or reversal by the trial court").

We are aware of respected authority to the effect that for the purpose of issue preclusion, or collateral estoppel, the degree of finality required respecting the prior adjudication may in many instances be less than is appropriate for claim preclusion, or true *res judicata.* However, "[t]he most prominent [of these] decisions have involved issues that were resolved by appeal prior to final judgment in the first action." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4434 at 321. *See, e.g., Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 87–90 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990, 995–96 (7th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980); *Dyndul v. Dyndul,* 620 F.2d 409, 411–12 (3d Cir.1980) (appeal available but foregone). *Lummus,* generally viewed as the leading case in this area, expressly recognizes the importance of "the opportunity of review" of the prior decision. 297 F.2d at 89.

We are not aware of any federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable, nor any which contradicts our above-cited opinions stating that partial summary judgment orders under Rule 56(d) are not preclusive.[6] Hence,

---

5. Thus, cases such as *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.,* 517 F.2d 110 (5th Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976), which involved final summary judgment on the entire case, are wholly inapposite.

6. We do not consider *O'Reilly v. Malon,* 747 F.2d 820 (1st Cir.1984), or *Alexander v. Chicago Park District,* 773 F.2d 850 (7th Cir.1985), as being to the contrary. In *O'Reilly,* the estopping disposition was a judgment in a fully tried case denying Mission any recovery against two of three parties; Mission appealed and the judgment was affirmed on the merits in a fully considered opinion. In the later action, Mission contended that the earlier appellate decision was without jurisdiction since no Rule 54(b) certificate had been procured, a matter that all had previously overlooked; the Court rejected this contention stating, "Since it was Mission that both appealed and overlooked the requirements of Rule 54(b), we do not believe it lies in Mission's mouth to urge us to refuse normal collateral estoppel effect to proceedings we both reviewed and participated in at its request." 747 F.2d at 822. The Court also seemed of the view that a Rule 54(b) certificate would have been granted if requested. *Id.* at 823. In *Alexander,* the estopping judgments were entered after full trial and wholly disposed of entire claims; it was held that they were reviewable on appeal because an adequate Rule 54(b) certificate had been given, the Court remarking that it was "convinced that the parties knew of their right to appeal." 773 F.2d at 855. Although the Court went on to state that the earlier judgments would support estoppel even if not appealable, this language appears to be dicta (it is also difficult to reconcile with the provision of Rule 54(b) that in the absence of a certificate the order "is subject to revision at any time" before final judgment disposing of all claims and parties). Moreover, *Alexander* involved a separate cause of action which had been fully and entirely litigated and

even were we to follow *Lummus*, we would not extend it to such a situation.[7] We recognize that there is highly respected authority suggesting a contrary approach. *See Restatement (Second) Judgments* § 13, illustration 2. The principal case relied on for this view is *Sherman v. Jacobson*, 247 F.Supp. 261, 268–69 (S.D.N.Y. 1965).

■ We respectfully disagree with *Sherman*. A recognized text states that "[t]here are some serious problems with" the broad *Restatement* formulation that the prior determination is issue preclusive if "sufficiently firm to be accorded conclusive effect," gives *Sherman* as an example, and observes that such an approach "seems calculated to create more problems than it would solve." 1B Moore's *Federal Practice*, ¶ 0.441[4] at 747. While the *Restatement* and another respected text assert that the availability of appellate review is a significant consideration in determining whether an otherwise nonfinal prior order should be issue preclusive,[8] the practical effect of *Sherman* seems to render appealability almost irrelevant. It appears to us that under a *Sherman*-type approach, the result is either that nearly every interlocutory ruling will be issue preclusive,[9] or that it will be almost impossible to deter-

mine in advance which will be preclusive and which not. The former alternative renders the availability of appellate review virtually irrelevant; the latter undermines predictability and efficiency. Further, issue preclusion is normally denied where the issue determined is not essential to the judgment (this is based both on a diminished confidence due to the lack of essentiality and on the unavailability of appellate review, *see Restatement (Second) Judgments* § 27, comments *h & i;* § 28, comment *a* ). Such denial is difficult to reconcile with the allowance of issue preclusion to rulings in a partial summary judgment order, as to which not only is appeal presently unavailable but it is also impossible to know whether appeal will ever be available and whether any issue thus ruled on will be essential to the judgment in the case. Moreover, *Sherman* rests in part on the premise that availability of relief under Rule 60(b) with respect to judgments which are final in the usual sense renders them just as subject to revocation or modification by the court which rendered them as are orders under Rule 56(d). 247 F.Supp. at 269. We have rejected this premise. *Zimzores v. Veterans Administration, supra. See also Acha v. Beame*, 570 F.2d 57, 63 (2nd Cir.1978).[10]

decided, which is not the situation with Rule 56(d) orders of the present kind.

7. We have not expressly spoken to whether the *Lummus* doctrine is the law of this Circuit. However, as previously indicated, we have stated that collateral estoppel requires no less finality than does *res judicata. See International Union of Operating Engineers v. Sullivan Transfer, supra.* In *Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1243 n. 47 (5th Cir.1981), "[w]e assume[d] *arguendo* that the Fifth Circuit rule is that expressed in *Lummus,* " but found no preclusion under the *Lummus* test. In *Pye v. Department of Transportation of State of Georgia,* 513 F.2d 290, 292 (5th Cir. 1975), we applied preclusion to issues that "were fully treated in both the state trial and appellate courts"; we seemed to view the prior state ruling as a judgment which was final in the traditional sense, although arguably it was not since there was a remand to determine damages.

8. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4434 at 326 ("the

inability to secure present review should be weighed carefully" and "[i]n many and perhaps most [such] circumstances, it would be better to delay the second trial or incur the costs of duplicate proceedings"); *Restatement (Second) Judgments* § 13, comment *g. See also id.* § 28, comment *a* ("the availability of review for the correction of errors has become critical to the application of preclusion doctrine").

9. Except perhaps for those rare cases where the prior interlocutory ruling "was avowedly tentative." *See Restatement (Second) Judgments* § 13, comment *g.*

10. A number of post-*Sherman* decisions of other Circuits recognize that nonappealable interlocutory orders should not be preclusive. *See, e.g., Horner v. Ferron,* 362 F.2d 224, 230 (9th Cir.), *cert. denied,* 285 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966); *Acha v. Beame,* 570 F.2d at 63. *See also Luben Industries, Inc. v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983).

Accordingly, we decline to depart from our previously stated rule that an order granting partial summary judgment "has no res judicata or collateral estoppel effect." *Golman,* 700 F.2d at 253.

Lloyds, however, argues that the June 1984 judgment in the King litigation somehow operated to cause the 1982 partial summary judgment order to become preclusive against Avondale, because there then was a final judgment in the case. We reject this contention. The 1984 judgment made no direct or indirect reference whatever to the 1982 partial summary judgment order or to prior orders in general, nor did it ever refer in any manner to whether the OGDEN DYNACHEM was a vessel or Avondale its owner or owner *pro hac vice.* The judgment was by consent and simply did two things: it approved, as being in *King's* best interest, his settlement with Avondale (by which Avondale paid him $120,000 cash), and it dismissed *King's* suit with prejudice. Obviously, such a judgment was not appealable. *See, e.g., Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 538 & n.15 (5th Cir.1978). This 1984 judgment breathed no more preclusive effect into the 1982 order than would have a judgment for Avondale based on a finding that it was not at fault, or that limitations had run.

This is not to say that the June 1984 judgment had no preclusive effect of its own. A consent judgment does support claim preclusion, or true *res judicata. Kaspar Wire Works,* 575 F.2d at 538–39. But such preclusion does not extend to a cause of action or "claim" different from that asserted in the previous suit. *Id.* at 535; *White,* 653 F.2d at 150–51; Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4407 at 48. While the definition of "claim" or cause of action is broad and general, it seems clear that King's personal injury tort claim against Avondale is a different claim or cause of action than either Avondale's insurance contract claim against Lloyds or Avondale's indemnity contract claim against Universal. "[E]ach plaintiff has a distinctive cause of action no matter how closely it may be related to the claims of other plaintiffs. A single plaintiff likewise has as many causes of action as there are defendants to pursue." *Id.* at 52–53 (footnote omitted). Thus, it is held that a nonparty controlling the prosecution or defense of a prior action, as nonparty Lloyds controlled Avondale's defense in the King suit, is subject to issue preclusion or collateral estoppel in respect thereto, but is not bound by true *res judicata* or claim preclusion in a subsequent suit to which it is a party in its own right, because the causes of action are necessarily different. *Montana v. United States,* 440 U.S. 970, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); 1B Moore's *Federal Practice* ¶ 0.411[6] at 445. Similarly, *Restatement (Second) Judgments,* section 39, provides that a controlling nonparty "is bound by the determination of issues decided as though he were a party," but comment *b* thereto observes that this rule "applies to issue preclusion, and not to claim preclusion, because the person controlling the litigation, as a nonparty, is by definition asserting or defending a claim other than one he himself may have." *See also id.* § 58 & illustrations 4 & 5; *Eason v. Weaver,* 557 F.2d 1202 (5th Cir.1977). Accordingly, it is clear that the June 1984 judgment in the King suit had no true *res judicata* or claim preclusive effect respecting Avondale's suit against Lloyds and Universal.

■ However, as above-indicated, neither the differences in the cause of action between the King suit and the present suit nor Lloyds' lack of formal party status in the King case prevent the June 1984 judgment therein from having issue preclusive or collateral estoppel effect here. Nevertheless, the issue preclusion now sought respecting that judgment is clearly unavailable for other reasons. To begin with, the June 1984 judgment was a consent judgment approving a settlement. Such a judgment ordinarily does not give rise to issue preclusion or collateral estoppel. *See Kaspar Wire Works,* 575 F.2d at 539; *Associates Capital Services Corp. v. Loftin's Transfer & Storage Co.,* 554 F.2d 188, 189

(5th Cir.1977); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4443 at 385 ("consent judgments ordinarily support claim preclusion but not issue preclusion"). As noted in 1B Moore's *Federal Practice*, "[s]uch a judgment is not a reliable adjudication of any issue except for that case, and should not have collateral estoppel effect." *Id.* ¶ 0.443[3] at 768. This authority also observes that collateral estoppel is inappropriate to consent judgments because they normally lack "the requisite ... judicial determination of issues...." *Id.* ¶ 0.444[3] at 814. Certainly these considerations are fully applicable to the June 1984 judgment in the King case, which determined *only* that the settlement was not unfair to *King* and dismissed King's suit. By no stretch of the imagination can that judgment be considered as any sort of adjudication or determination of the vessel status or any species of ownership of the OGDEN DYNACHEM. The 1982 partial summary judgment order does not change this result; it was not in any way referred to in the 1984 judgment. *Cf. Loftin's Transfer & Storage Company*, 554 F.2d at 189; Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4443 at 388 ("Issue preclusion also seems inappropriate if a trial court has actually decided an action on the merits but the parties have settled pending appeal."). It is recognized that issue preclusion may arise from the intent of the agreement of the parties to the settlement and judgment

approving it, but normally that intent does not extend beyond what would be achieved by claim preclusion. *Id.* at 384–85. Here it would be farfetched indeed to suggest that King—let alone Avondale—had any intent to preclude Avondale on any issue in a suit by the latter against Lloyds or Universal. And, as between Avondale and Lloyds, it was agreed that the present Louisiana suit would determine the issue of insurance coverage. Moreover, and particularly as to Universal, "to foster consent agreements we have held that in general a consent decree is not binding on parties not in privity with the parties to the decree." *Sorenson v. Raymond*, 532 F.2d 496, 499 (5th Cir.1976). To hold that the 1984 King suit consent judgment bound Avondale on the vessel and ownership issues in its suit against Lloyds and Universal would both extend collateral estoppel beyond the considerations justifying it and seriously undermine the law's policy favoring settlement. This we decline to do.[11]

### (b) The merits

■ Because the King litigation does not preclude Avondale from contending in this suit that it was not the owner *pro hac vice* of the OGDEN DYNACHEM, we turn to the merits of that issue. Lloyds contends that vessel ownership, for purposes of its policy's watercraft exclusion (*see* note 2, *supra* ), is to be determined under the same standards as vessel ownership for purposes of the LHWCA and its section 905(b).

---

**11.** Nor will we reach a contrary result based on the original panel opinion in *Chemetron Corporation v. Business Funds, Inc.*, 682 F.2d 1149, 1187–92, 1200–1203 (partial dissent) (5th Cir. 1982), *vacated and remanded for further reconsideration on other grounds*, 460 U.S. 1013, 103 S.Ct. 1245, 75 L.Ed.2d 483 (1983), *initial opinion adhered to on remand*, 718 F.2d 725, 728 (adhering to initial partial dissent) (5th Cir.1983), *rehearing en banc ordered, id.* at 730. After the case was taken en banc, the parties settled and the litigation was terminated. Since the original panel action in *Chemetron* was vacated and remanded by the United States Supreme Court, and since the panel opinion on remand was ordered reheard en banc and was thus vacated, we do not regard *Chemetron* as binding precedent. Moreover, the situation in *Chemetron* was significantly different: there the case had been fully tried on all issues and complete findings and conclusions had been entered; the trial judge said there were no grounds for new trial. The panel majority considered that the defendant "settled *only* to avoid offensive collateral estoppel, not litigation," and that only the "ministerial act" of entering an actual judgment on the findings and conclusions remained. 682 F.2d at 1190 (emphasis added). Here, by contrast, there had been no determination or litigation of at least two issues necessary to holding Avondale liable, namely, fault and causation, nor of the fact or extent of King's damages, and Avondale settled for less than half of King's claim. Further, in *Chemetron*, the party seeking to avail itself of estoppel had not agreed, as had Lloyds and Avondale, that the rights and obligations between it and the allegedly estopped party would be determined in the subsequent litigation.

While the district court disagreed with this contention, we need not reach that issue, as we hold that, contrary to the premise of Lloyds' claim, Avondale was not the *pro hac vice* owner of the OGDEN DYNACHEM for purposes of section 905(b) or otherwise.

In *Trussell v. Litton Systems, Inc.*, 753 F.2d 366 (5th Cir.1984), we held that a shipyard having no more than custody and control of a vessel for purposes of effecting its construction cannot be deemed an owner *pro hac vice* of the vessel or to otherwise stand in such relation to it as to be deemed a vessel under section 902(21) for purposes of section 905(b). In *Trussell,* an employee of a subcontractor was injured while working on a vessel being constructed by Litton for the United States, which held title to the incomplete vessel. In addressing the employee's section 905(b) claim against Litton, we considered whether Litton was the *pro hac vice* owner of the vessel at the time of the injury. We examined previous decisions holding that a bare boat or demise charterer is an owner *pro hac vice* of the vessel, and cases holding that a ship repairer does not have the requisite degree of control over a vessel to be its *pro hac vice* owner. *See Bossard v. Port Allen Marine Service, Inc.*, 624 F.2d 671 (5th Cir.1980). We concluded in *Trussell* that "[a] shipbuilder—like a ship repairer—does not have the unrestricted use of a vessel required of an owner pro hac vice." 753 F.2d at 368. And, we held that accordingly Litton was "not subject to liability to plaintiff under section 905(b)." *Id.* Avondale, like Litton, did not hold title to the incomplete vessel and had no right to use the vessel other than for purposes of effecting its construction. Therefore, we find that when King was injured Avondale was not the *pro hac vice* owner of the OGDEN DYNACHEM, and did not otherwise stand in such relation to it as to be deemed a vessel under section 902(21) for purposes of section 905(b).

Lloyds argues that the watercraft exclusion exempts from coverage liability that arises out of the incidents of ownership of the vessel. It relies upon *Tidex, Inc. v. A.L. Commercial Blasting Corp.*, 567 F.Supp. 918, 922 (E.D.La.1983), and *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485, 491–92 (E.D.La.1978), in which vessel demise charterers, as owners *pro hac vice*, were precluded from coverage by similar watercraft exclusions. Those cases, however, rest on the "[l]ong ... established" rule of admiralty that "a demise charterer is considered the owner of the vessel *pro hac vice.*" *Id.* at 491. *See also, e.g.*, Gilmore & Black, *Admiralty* § 4-1 at 194 (2d ed.); 46 U.S.C. § 186. In *Trussell,* we held that a shipbuilder was *not* the equivalent of a demise charterer, and was not an owner *pro hac vice.* In light of *Trussell,* the cited cases relied on by Lloyds do not support the application of the watercraft exclusion to a shipbuilder. Based on *Trussell,* we hold that Avondale lacked the incidents of ownership necessary to bring it within the watercraft exclusion. Therefore, Avondale, as an additional insured, was covered by the comprehensive general liability policy.

*Contractual Indemnity*

Avondale cross-appeals against Universal and Lloyds seeking indemnity for its settlement payments to King. The district court denied such relief, reasoning that because Avondale was found to be a *pro hac vice* owner in the King litigation, its indemnity agreement with Universal is void under section 905(b).

■ Section 905(b) clearly provides that in an employee's negligence action under this section against a vessel as third party, the employer will not be liable to the vessel and any agreements to the contrary are void. *See* note 1, *supra.* The indemnity agreement between Avondale and Universal, however, is void only if Avondale is a "vessel" for purposes of section 905(b). *See Pippen v. Shell Oil Co.*, 661 F.2d 378, 386–88 (5th Cir.1981); *Tran v. Manitowoc Engineering Co.*, 767 F.2d 223, 229 (5th Cir.1985). We have already determined that the King litigation does not bar Avondale's contention in the present suit that it is not a section 905(b) vessel. When King was injured, Avondale did not own or hold title to the OGDEN DYNACHEM. *Cf. Hall v. Hvide Hull No. 3*, 746 F.2d 294, 304

(5th Cir.1984) (shipbuilder with contractual ownership interest in vessel may be vessel owner under section 905(b)), *cert. denied,* — U.S. ——, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985). We held in *Trussell* that the shipbuilder, which did not own or hold title to the vessel but merely "contracted to construct the vessel" and had "no right to use it for any other purpose," was not a "vessel" for purposes of section 905(b). Therefore, we find that shipbuilder Avondale is not a vessel for purposes of section 905(b), and that the indemnity agreement between Avondale and Universal is valid.

### Conclusion

For the foregoing reasons, we affirm the district court's holding that Avondale may recover under the Lloyds comprehensive general liability policy issued to Universal. We reverse the district court's determination that the indemnity agreement between Avondale and Universal is void, and hold that Avondale may also recover in contractual indemnity.

AFFIRMED in part; REVERSED in part.